FULTON SAUSSEY, AS RECEIVER OF THE COMMERCIAL BANK OF JACKSONVILLE, A CORPORATION UNDER THE LAWS OF FLORIDA, *Appellant*, v. R. H. LIGGETT, *Appellee*.

Opinion filed March 8, 1918.

1. The rule is that when a case is heard on bill and answer all the averments of the answer are taken as true.

2. The liability of a stockholder of a banking company is *ex contractu*.

3. Double liability of a stockholder of a banking corporation organized under the laws of this State depends upon the terms of the statutes creating it, and as such statutes are

in derogation of the common law they cannot be extended beyond the words used.

4.  By a Special Act of the Legislature, namely Chapter 4272, approved May 9th, 1893, a banking corporation was created and granted a Special Charter containing a provision "that the stockholders of said corporation shall not be individually liable for the debts of the company, except to the extent of any unpaid subscription to the said capital stock thereof." Subsequently proceedings were taken under authority of Section 2727 General Statutes of 1906 with a view to converting said corporation into a Banking Company under the General Banking law. *Held*, applying the rule stated in the headnote immediately preceding, that such alleged conversion did not have the legal effect of placing upon the stockholders the double liability imposed by Section 2700 General Statutes of 1906 upon stockholders in Banking Companies organized under the General Banking law since the statute authorizing the conversion does not purport to, and does not in fact provide that such shall be its effect upon the stockholders.

Appeal from Circuit Court for Duval County, Daniel A. Simmons, Judge.

Order affirmed.

*Odom, Crawford & Butler,* for Appellant;

*John C. Cooper & Son,* for Appellee.

WEST, J.—This is a suit brought by the Receiver of the Commercial Bank of Jacksonville against R. H. Liggett, one of the stockholders of the bank, and has for its object the enforcement of an alleged obligation and liability of said stockholder to said bank in an amount equal to the par value of the several shares of stock owned and held by him in addition to the amount invested in such shares.

We shall not set out nor recite the allegations of the bill of complaint but it will be assumed that the bill sufficiently stated the cause of action relied on by complainant.

Answer was filed by the defendant and the case was heard on bill and answer. The answer omitting formal parts and exhibits is as follows:

"1. That the said Commercial Bank of Jacksonville is a corporation created by special Act of the Legislature of the State of Florida, approved May 9th, 1893, under the name of Savings and Trust Bank of Florida, Chapter 4272 of the laws of Florida, reference to which is had and which is made a part of this answer as fully as though set forth therein in terms; that said Act was amended by Chapter 4459 of the laws of Florida, approved May 29th, 1895, reference to which is had and which is also made a part hereof, as fully as though set forth herein in terms, that by Chapter 4459 said corporation was given leave to change its name in the manner prescribed by the General Incorporation law of Florida, and in pursuance of said authority said corporation changed its name to that of Commercial Bank of Jacksonville.

"2. This defendant further answering says that Section thirteen of said Special Charter, Chapter 4272, provides as follows:

" 'That the stockholders of said corporation shall not be individually liable for the debts of the Company, except to the extent of any unpaid subscription to the said capital stock thereof.' And the power to modify this provision of law by action taken under the provisions of any general law, was expressly excluded by Section 24 of said Act of May 9th, 1893, which provides as follows:

" 'That all laws and parts of laws conflicting with the provisons of this Act are hereby repealed.'

"3.   Further answering this defendant says that some time prior to 1899, this defendant purchased from the said Commercial Bank thirty-seven shares of its capital stock, which are the shares referred to in the bill of complaint, and paid cash therefor; that for some of said stock defendant paid one hundred dollars per share and for the balance he paid an amount considerable in excess of one hundred dollars per share; that certificates for these thirty-seven shares of stock were issued to defendant prior to 1899, and that respondent had owned and held said certificates of stock continuously from that date to the present time and still owns and holds the same.

"4.   Further answering this defendant says that he has not received a dividend or a return of any kind from said shares of stock since the year 1907, and that to the best of defendant's recollection he had received but two dividends on said stock since 1899.

"5.   Further answering this defendant, upon information and belief, says that some time prior to April 16th, 1912, the Comptroller of the State of Florida notified the officers of said bank that they must surrender the said Special Charter and incorporate under the General Banking law of the State of Florida, and in compliance with this demand certain shareholders of said Commercial Bank, who owned eight hundred and three shares out of a total of one thousand shares of the capital stock of said bank, met together on April 9th, 1912, and attempted the adoption of the certain Resolution set forth in 'Exhibit A' hereto attached, and said shareholders signed a written consent to said meeting on the

record thereof and a written consent that 'the action of said meeting should be valid in all respects.'.

"6. This defendant further answering says that in pursuance of the Resolution adopted at said meeting, certain Directors of the Commercial Bank filed with the Comptroller of the State of Florida an application to have the said Commercial Bank organized into a banking company under the General Banking law of Florida, a copy of which application is filed as part hereof and marked 'Exhibit B;' that thereupon the Comptroller of the State of Florida, under his official hand and seal issued and delivered to said Directors a certain document, a copy of which is filed as part hereof and marked 'Exhibit C.'

"7. Further answering this defendant avers that said meeting of April 9th, 1912, was not an annual or regular meeting of shareholders, and that no notice was given to shareholders of the time and place or object of said meeting except to those actually participating; that defendant has been a non-resident of Florida since 1902, and had no notice of said meeting and had no knowledge of the action taken at said meeting or of the said application to the Comptroller to issue a charter under the General Banking law, or of the said certificate of said Comptroller until the month of May, 1915.

"8. Further answering this defendant says that some time prior to January 1st, 1913, and while absent from the State of Florida, he observed in a newspaper report or notice of some action being taken by the officers or shareholders of the Commercial Bank to amend the charter of the Bank so as to conform it to the General Banking law, but this defendant is unable to recall the time or nature of the said report more definitely than here stated.

"This defendant further avers that he was in the State of Florida during the period intervening between January 5th, 1913, and February 1st, 1913, and that during that time he inquired of Herbert Race, President of the Commercial Bank, concerning said report and that said Race informed defendant that they had amended the charter of the Bank so as to impose double responsibility on shareholders and that they had to do it.

"And this defendant says that neither from the said newspaper report nor from the statements of said Race did this defendant get the information that an attempt had been made to surrender the special charter of the Bank and to organize under the General Banking law, and that when defendant learned of this in May, 1915, as hereinbefore alleged, the information was a complete surprise to him. And this defendant says that he had at all times relied uon his right to have his liability fixed by the said Special Charter and has believed that the acts of the officers and shareholders of the Commercial Bank, which were designed to alter the extent of defendant's liability, were void and ineffectual.

"9. This defendant further answering avers that Chapter 4272 of the laws of Florida is an essential part of the contract under which he purchased said thirty-seven shares of stock, and that there has never been any other or different contract between him and said Commercial Bank in respect to said thirty-seven shares of stock save and except the said original contract of purchase, and that he had never agreed to any extension of the original terms of liability or received any new and valuable consideration from said Commercial Bank or any one else on account of said contract.

"10. Further answering this defendant says that the Special Charter under which the Commercial Bank was

organized constituted a contract between the State of Florida and said corporation, and that the action of the Comptroller in demanding the surrender of said Special Charter and the issuance of the certificate, 'Exhibit C,' by the said Comptroller for the purpose of changing the measure of the liability of the shareholders in said Commercial Bank, impaired the obligation of the contract between the State of Florida and said Commercial Bank, as expressed in said Act of May 9th, 1893, Chapter 4273 laws of Florida, within the meaning of Article One, Section Ten of the Constitution of the United States, and of Article I, Section 17 of the constitution of Florida. And this defendant specially and severally claims the protection of said constitutional provisions against the attempt of the State of Florida, acting through its Comptroller, to destroy the immunity given by Section thirteen, Chapter 4272, Laws of Florida, and to substitute therefor the larger measure of responsibility imposed by the General Banking Law.

"And this defendant further says that the said attempted reorganization of said Commercial Bank would, if carried out, destroy the original corporation and the shares of stock issued by said corporation and deprive this defendant of his property without due process of law within the meaning of Article I, Section 12, of the Constitution of Florida and the Fourteenth Amendment to the Constitution of the United States, and this defendant specially and severally claims the protection of said constitutional provisions against said aggression."

Upon the hearing an order was made by the Circuit Judge dismissing the bill and from that order this appeal was taken.

The errors assigned are based upon this order.

The rule is that when a case is heard on bill and answer all the averments of the answer are to be taken as true. Irvine v. Epstein, 45 Fla. 370, 33 South. Rep. 1003; Godwin v. Phifer, 51 Fla. 441, 41 South. Rep. 597.

So that the facts averred being assumed to be true, the question presented is whether or not the action of certain of the stockholders of this banking company, organized and existing under a Special Charter, at the meeting held by them pursuant to the provisions of Section 2727 General Statutes of 1906, for the purpose of changing said banking company and converting it into a banking company under the General Banking law had the legal effect of changing the measure and increasing the extent of the liability of a stockholder in such banking company.

The contention of the appellant is that the legal effect of the proceedings taken by the stockholders conformable with the notice and request from the Comptroller of the State was to place upon all the stockholders, whether participating in such meeting or not, the obligations imposed by Section 2700 General Statutes of 1906 upon stockholders in Banking Companies organized under the General Banking law, namely: liability equally and ratably and not for the one another for all contracts, debts and engagements of such companies to the extent of the amount of their stock therein at the par value thereof *in addition to the amount invested in such stock.*

But the appellee replies that even if it were conceded, which it is not but on the contrary is denied, that such obligations could be thus legally imposed, a compliance with the provisions of Section 2727 General Statutes of 1906, does not so operate because the statute does not purport to and does not in fact directly deal with the

question of the obligations and liability of stockholders as such in such companies.

It is perfectly clear that the stockholders of this company were not, under the Special Charter granted by the Legislature to them, liable for the debts of the company it being expressly provided in such Charter "That the stockholders of said corporation shall not be individually liable for the debts of the Company, except to the extent of any unpaid subscription to the said capital stock thereof." Therefore if such liability exists it is by virtue of the provisions of Section 2727 General Statutes of 1906, and the proceedings of the stockholders taken thereunder.

This statute is as follows: "Any bank incorporated by special law, or any banking institution organized under any law of this State, may become a banking company under these provisions by the name prescribed in its charter, and in such case the new charter may be executed by a majority of the directors of the bank or banking institution; a majority of the directors, after executing the new charter, shall have power to execute all other papers and to do whatever may be required to make its organization perfect and complete. The shares of any such bank may continue to be for the same amount each as they were before the conversion, and the directors may continue to be the directors of the company until others are elected or apopinted in accordance with these provisions. When the Comptroller has given to such company a certificate, under his hand and official seal, that the provisions of law have been complied with, and it is authorized to begin the business of banking, the company shall have the same powers and privileges and shall be subject to the same duties, responsibilities and rules in all respects as are prescribed for other

banking companies originally organized under these provisions, and shall be held and regarded as such a company. But no such company shall have a less capital than the amount prescribed for companies organized hereunder."

The liability of a stockholder of a banking company arises *ex contractu* (McNeill v. Pace, 69 Fla. 349, 68 South. Rep. 177; Whitman v. Oxford Nat. Bank, 176 U. S. 559, 20 Sup. Ct. Rep. 477) and even if the additional obligations and liability of the stockholder which is insisted upon here may be imposed by statute, such obligations and liability depend upon the statute creating it, and as it is in derogation of the common law the statute cannot be extended beyond the words used. 1 Michie on Banks and Banking, p. 162; Brunswick Terminal Co. v. National Bank of Baltimore, 192 U. S. 386, 24 Sup. Ct. Rep. 314; Smathers v. Western California Bank, 135 N. C. 410, 47 S. E. Rep. 893.

By reference to the statute it will be seen that the effect of the proceedings taken thereunder *upon the company* is expressly and definitely stated, but we can find nothing in this statute which would support a holding to the effect that such proceedings also place upon the stockholders in such company obligations of the character assumed by stockholders in Banking Companies organized under the General Banking law as contended for here. Neither the words stockholders nor shareholders nor equivalent words are found in the statute, and to extend it so as to include them would be in direct violation of the rule which we have found is applicable and controlling in the construction of such statutes.

From what we have said it follows that the order appealed from must be affirmed.

It is so ordered.

BROWNE, C. J., AND TAYLOR, WHITFIELD, AND ELLIS, J. J., concur.