J. B. JOHNSON, RECEIVER OF LIVE OAK CITIZENS BANK,
Plaintiff in Error, v. J. B. BARTON, Defendant in Error.

Opinion Filed January 26, 1920.

1. Under the provisions of Section 2700, General Statutes of
Florida, stockholders of banking companies doing business un-
der the general banking laws of this State are individually
responsible equally and rateably and not one for another for
all contracts, debts and engagements of such companies to
the extent of the amount of their stock therein at the par
value thereof in addition to the amount invested in such
shares.

2. The Live Oak Bank was incorporated by Act of the Legisla-
ture in 1895, the Legislative Charter containing the following
provision: "No shareholder shall be liable for any debt of
said corporation, except to the extent of his unpaid subscrip-
tion to said capital stock." Subsequently by unanimous ac-
tion of the stockholders and the directors this charter was
abrogated and a new charter was obtained from the State,
pursuant to the provisions of Section 2727, General Statutes
of Florida, under which charter such bank conducted its busi-
ness as a banking company for a period of years, at the end
of which time it and the Citizens Bank of Live Oak, a bank-
ing company organized and doing business under the gen-
eral banking laws of the State were consolidated and became
the Live Oak Citizens Bank.

Held that a stockholder in the Citizens Bank of Live Oak who
became a stockholder in the Live Oak Citizens Bank, the
bank resulting from such consolidation and referred to in
the agreement of consolidation as the "new bank," can not
successfully claim immunity and exemption from the double
liability imposed by statute upon stockholders in banking
companies doing business under the general banking laws of
this State, upon the insolvency of such bank and an assess-
ment made by the Comptroller against the stockholders there-
of, because of any supposed relationship of such stockholder
to such Legislative charter containing such exemption.

3. To permit the exemption from liability contended for in this case would give sanction to a fraud against the creditors of the bank which the law will not tolerate.

4. It is provided by statute in this State (Chapter 6426, Acts 1913) that a ,bank which in good' faith is winding up its affairs for the purpose of consolidating with some other bank may transfer its resources and obligations to the bank with which it proposes to consolidate, "but no such consolidation shall be made without the consent of the Comptroller of the State, nor shall such consolidation operate to defeat the claim of any creditor or hinder any creditor in the collection of his debt against such banks or either of them."

5. A bank becomes the absolute owner of money deposited with it to the general credit of a depositor, in the absence of any special agreement importing a different character into the transaction, and the relationship is simply that of debtor and creditor.

A Writ of Error to the Circuit Court for Suwannee County; M. F. Horne, Judge.

Judgment reversed.

*J. B. Johnson*, for Plaintiff in Error;

*C. D. Blackwell*, for Defendant in Error.

WEST, J.—This is a suit brought by J. B. Johnson, Receiver of the Live Oak Citizens Bank, plaintiff in error, against J. B. Barton, a stockholder in said bank, defendant in error, for the purpose of enforcing the payment of an amount alleged to be due by him upon an assessment made by the Comptroller of the State against the stock owned and held by said defendant in error in said Live Oak Citizens Bank because of the alleged insolvency of such bank.

In the court below there was a judgment for defendant and plaintiff took writ of error.

The case involves the question of whether or not the defendant in error is liable upon such assessment, his theory being that he is exempt from such liability because of a provision contained in the charter given by the Legislature to the Live Oak Bank by special act, Chapter 4463, Acts of 1895. The provision referred to is as follows:

"The capital stock of said corporation shall be fifty thousand dollars, divided into shares of one hundred dollars each, which amount of fifty thousand dollars shall be paid in before said corporation shall be authorized to commence business; such capital stock may be increased not to exceed one hundred thousand dollars, or diminished by the board of directors, and no shareholder shall be liable for any debt of said corporation, except to the extent of his unpaid subscription to said capital stock."

The following is a brief history of the transactions out of which the issue presented to the court was developed by the pleadings.

In the year 1895 the Live Bank was incorporated under a special act of the Legislature, the charter containing the provision hereinbefore set out. In 1911 the stockholders of such bank, with a view to converting it into a bank doing business under the general laws of the State, unanimously adopted a resolution as follows:

WHEREAS, the Live Oak Bank was incorporated by special act of the Legislature in the year 1895 and at the time when banks were not common in the interior of Florida, and few people were interested in or willing to invest in the stock or Banking Companies, and, whereas, the special act incorporating said Live Oak Bank gave and granted to the incorporators certain special rights and privileges which are at the time, in the opin-

ion of the stockholders of said Bank, out of harmony with the General Banking Laws of the State of Florida and are not calculated to advance the best interest of the Bank, its stockholders or depositors, and, whereas, said act incorporating said Bank is vague, indefinite and uncertain, especially in the Third section thereof in so far as it relates to the power and authority of the directors and the vote of said directors as set out in said paragraph as follows, to-wit:

" 'And no measure shall be passed and no person shall be elected to any office without receiving the votes of the members of such board owning and representing a majority of the shares of said capital stock.'

"And also in Section 5 of said acts by the terms of which the directors are authorized and empowered to increase or diminish the said capital stock, and relieving the stockholders of all liability on account of any obligation of said bank, except to the extent of his unpaid subscription to said capital stock. And, whereas, in the opinion of the stockholders of said bank, it is to the best interest of all concerned that said charter be amended and reformed so that the same may conform to the general banking laws of the State of Florida. Therefore, BE IT RESOLVED, that the Board of Directors be, and they are hereby authorized and empowered to amend and reform said Charter in whatever manner may be necessary, so that it shall conform to the general Banking Laws of this State, and that the same be done as soon as practical, the approval and signature of all the stockholders being first had to this resolution."

After the adoption of the foregoing resolution the following resolution was unanimously adopted by the Board of Directors of the bank:

4—Vol. 79

"Resolutions of Board of Directors of the Live Oak Bank duly adopted at a meeting of said Board of Directors duly called and holdon, at the office of said corporation in the City of Live Oak, Florida, on the 9th day of October, 1911.

"WHEREAS, It is deemed to the best interest of Live Oak Bank, a banking corporation heretofore chartered under and by virtue of a special act of the Legislature, becomes a general bank regulated by the provisions of general law as now made and provided.

"AND, WHEREAS, It is necessary to change the now existing charter of the said Live Oak Bank so as to conform to the provisions of the general law as made and prescribed in this State for banking companies in order that such bank may become a banking corporation under the general provisions of law;

"THEREFORE, Be it resolved by the Board of Directors assembled at a meeting duly and regularly called and holden at the office of the said Live Oak Bank on the 9th day of October, 1911, that the said charter of said Live Oak Bank be changed, and modified so as to conform to the general provisions of law for banking companies;

"BE it further resolved that the Board of Directors forthwith execute proposed charter in order to carry into effect the provisions in this resolution; said proposed charter as amended or modified to be in accordance with .................................................. furnished by the Comptroller of the State of Florida;

"And be it further resolved that the hereto attached charter be, and the same is hereby adopted by the Board of Directors of said Live Oak Bank;

"And be it further resolved that a committee of two from among the Board of Directors, stockholders of this bank, be and they are hereby directed to take necessary steps to carry into effect the proposed charter, and procure approval and a Certificate of the Comptroller of the State of Florida."

Following the adoption of the foregoing resolution a majority of the directors made application to the Comptroller of the State to have said bank converted into and become a banking company under the laws of the State of Florida as provided by Section 2727 of the General Statutes, and accompanied their application with the charter which they proposed for said bank and which contained no exemption to stockholders such as was contained in the original charter. Thereupon, on the 19th day of October, A. D. 1911, the application was granted by the Comptroller and said bank was authorized to and did thereupon commence the business of banking with a capital stock of $50,000 under its new charter.

Thus far we have dealt only with the history of the Live Oak Bank, and we have found that its stockholders apparently did everything possible to be done by them to abrogate its old legislative charter containing the quoted provision of exemption to the stockholders. By resolution of the stockholders and directors, unanimously passed and adopted, such charter was declared inimical to the interest of the institution, and in its stead another charter, converting such institution into a bank under the general law, under which no such exemtpion exists, was proposed by the stockholders themselves, was accepted by the State and authority was given, in accordance with the law of the State, for the bank to proceed to do business under the new charter which it had asked for,

and such bank did thereafter for a number of years proceed thereunder to carry on and conduct the business of banking.

Now, in the year 1907, J. B. Barton, the defendant in error, and others associated with him, organized the Citizens Bank of Live Oak, which was also capitalized at $50,000. This bank was incorporated under the general laws of the State and the stockholders of course assumed the double liability imposed upon stockholders in an institution of this kind by Section 2700, General Statutes of Florida, idem Florida Compiled Laws. Such was the character of the stock of the defendant in error Barton at that time. The stock which he held at the time the assessment was made, which is the basis of this suit, was stock issued to him pursuant to a consolidation of the bank in which he held stock, namely, the Citizens Bank of Live Oak, and the Live Oak Bank, which consolidation was effected in March, 1915, by an agreement containing the following provisions: that the Citizens Bank of Live Oak would transfer to the Live Oak Bank all its property and assets of every kind, and that the latter would assume and pay all valid claims and obligations of the former; that the Live Oak Bank would proceed to amend its charter in certain respects for the purpose of perfecting such consolidation, including a change in its name to the Live Oak Citizens Bank and an increase in its capital stock to $100,000, and that "when the charter of the said Live Oak Bank is amended, *the new bank, that is to say the Live Oak Citizens Bank will issue to any shareholder of the Live Oak Bank or the Citizens Bank of Live Oak* the amount of stock held by each stockholder in the last mentioned banks, upon his surrender of the stock held by him in such banks for cancellation." (italics supplied).

The amendments proposed and agreed upon were approved by the Comptroller on the 22d day of July, 1915, whereby the name of Live Oak Citizens Bank was given to the institution, which was capitalized at $100,000.

As we have seen, the stock held by the defendant in error upon which the assessment was made is stock issued by the Live Oak Citizens Bank, the product of the consolidation referred to and called in the agreement "the new bank," such stock being issued to the defendant under the quoted agreement in lieu of stock owned and held by him in the Citizens Bank of Live Oak, which was and always had been a bank organized and doing business under the general law, by the terms of which, as we have seen, a double liability is imposed upon its stockholders.

Yet, the defendant in error contends now that, although as an owner of the stock surrendered by him he was subject to the double liability imposed by law, upon such surrender and the issue to him in lieu thereof of stock in the new institution resulting from such consolidation, he escapes and is exempt from such liability. This claim is predicated, so it is said, upon the theory that the consolidation of the bank in which he held stock with the Live Oak Bank so relates him as a stockholder in "the new bank" to the exemption from liability contained in the original charter of the Live Oak Bank that he may now invoke its protection, which theory, so it is alleged, is in accord with the holding of this court in the case of Saussey v. Liggett, 75 Fla. 412, 78 South. Rep. 334. In that case, however, the facts were wholly different from the facts in this case. There the stockholder contesting the question of his alleged double liability was a stockholder under a legislative charter containing an exemption to stockholders similar to the exemption contained

in the legislative charter given to the Live Oak Bank. Long after he acquired such stock there had been a conversion of such bank into a bank doing business under the General Laws of the State, of which conversion he alleged no notice was given him and in which he in no wise participated. Later, upon the insolvency of the bank and an assessment made against the stockholders for the purpose of raising funds necessary to take care of its obligations to its creditors, this stockholder set up the defense of his exemption from such obligation as a stockholder under the original charter because of the absence of any notice to him of any change or any attempt to change the charter in such manner as would increase the obligation of stockholders in such bank.

We have set out somewhat fully the various proceedings which were taken by the bank holding the legislative charter involved in this case and the bank in which the defendant in error Barton was interested and the consolidation of the two banks, for the purpose of showing the difference between the facts in this case and the facts in the case upon which defendant in error relies.

It is perfectly clear, we think, that the defendant in error's contention cannot be allowed. The effect of it would be *ipso facto* to destroy and take away from the creditors of the bank in which the defendant in error originally held stock the asset, consisting of the obligation of the defendant in error on his double liability as a stockholder, which, assuming him and his associate stockholders to have been solvent at the time, would have swept out of existence an asset of the bank amounting to $50,000 which its creditors had a right to, and presumably did, rely upon for their protection when they deposited their money in the bank. No such transaction as this can be upheld. It is patently a fraud against

every creditor and depositor of the bank. Such transaction is not only fraudulent as to creditors because of its character, but is forbidden by statute. By Section 12 of Chapter 6426, Acts of 1913, Laws of Florida, it is provided:

"Any bank, which is in good faith winding up its business for the purpose of consolidating with some other bank, may transfer its resources and liabilities to the bank with which it is in process of consolidating, but no consolidation shall be made without the consent of the Comptroller of the State, *nor shall such consolidation operate to defeat the claim of any creditor or hinder any creditor in the collection of his debt against such banks or either of them."* (italics suppliied.)

This court has several times held that a bank becomes the absolute owner of money deposited with it to the general credit of a depositor, in the absence of any special agreement importing a different character into the transaction, and the relationship is simply that of debtor and creditor. City of Miami v. Shutts, 59 Fla. 462, 51 South. Rep. 929; Camp v. First National Bank of Ocala, 44 Fla. 497, 33 South. Rep. 241; Collins v. State, 33 Fla. 429.

The assignments of error relied upon by plaintiff in error are well taken and the judgment is reversed.

BROWNE, C. J., AND TAYLOR, WHITFIELD AND ELLIS, J. J., concur.