McCRORY STORES CORPORATION, a corporation, *Appellant,* vs. W. H. TUNNICLIFFE, as Liquidator of the State Bank of Orlando & Trust Company, an insolvent banking corporation; W. L. TILDEN, as former Liquidator, *Appellees.*

140 So. 806.

En Banc.

Opinion filed April 5, 1932.

684

*Claude L. Gray* and *Akerman & Akerman,* Attorneys for Appellant;

*H. M. Voorhis* and *J. R. Wells,* Attorneys for Appellees.

DAVIS, Commissioner.—The State Bank of Orlando & Trust Company were in possession of certain property in the City of Orlando under a twenty-year lease from the first day of April, 1907, executed by one T. J. Watkins, the predecessor in title to the appellant herein. On the fifth day of April, 1918, Thomas J. Watkins, the then owner of the said property, gave to the said State Bank of Orlando, the name of said bank being subsequently changed to the State Bank of Orlando & Trust Company, an option "to be exercised before the close of its term to demand and receive a renewal of the said lease, for a further period of ten or twenty years at the choice of the party of the second part (said bank) from the close of the term created by the said lease upon the conditions and provisions of the original lease." Subsequently, appellant acquired title to the property.

On March 9th, 1927, some days prior to the expiration of the term under the original lease, the said bank and trust company notified the appellant, the then owner of the property, that it would exercise its option for a renewal of the said lease for a further period of twenty years from the close of the term upon the conditions and provisions of the original lease. Whereupon, the appellant notified the said bank and trust company that it refused to recognize the right of said bank and trust company to extend the lease and that it would be required to surrender and deliver up to the appellant full possession of the premises on April 1st, 1927. The said bank and trust company, prior to the expiration of its term under the original lease, forwarded to the appellant a New York draft drawn to the order of appellant in the sum of $241.43 "in payment of rent for April on office

rooms in the Watkins Block'', which draft was returned by appellant on April 1st, 1927, and at the same time, appellant advised the said bank and trust company that it would be required to surrender and deliver up the premises forthwith. The said bank and trust company acknowledged the receipt of appellant's letter under date of April 1st, 1927, and stated that it would ''defend its rights in this matter and that your returned check for the rent has been placed in a special account to keep the tender good until you shall see fit to accept it.'' On the 22nd day of April, 1927, a bill of complaint was filed by the said bank and trust company for specific performance of the agreement of April 5th, 1918. Subsequently, the said bank and trust company was placed in the hands of a liquidator and the appellee, W. H. Tunnicliffe, as liquidator of the State Bank of Orlando & Trust Company, was made a party complainant to the bill. The appellant in its answer alleged that the said bank on each and every succeeding month after April 1st, 1927, until the closing of said bank, deposited in said special account the sum of $241.43, for the particular purpose of keeping said tender of monthly rentals to the appellant good, and set up by way of counterclaim the right of appellant to a preferred claim for the aggregate of said sums and asked for priority in payment over general or common creditors of said bank and trust company. The answer also sought to establish a general claim against the liquidator of said bank for double the amount of rent to the appellant, by reason of the refusal of the bank and its successors to vacate premises which it occupied under the lease which had expired, such right being based on Section 3554, Revised General Statutes (1920). The Chancellor granted a motion to strike those portions of the answer setting up the alleged counterclaim and the right of appellant to double the amount of the rental

value of the premises. From this order, an appeal was taken to this Court.

It is argued here in effect, on behalf of appellant, that the placing of said funds in a special account constituted a "special deposit" for a specific purpose, which made of it a trust fund for the benefit of appellant, and in consequence thereof, it has a preferred claim for said aggregate sum.

The term "deposit", when used in connection with a banking transaction, denotes a contractual relation between one who delivers money or a thing to a bank which received it with the implied agreement on the part of the bank that the deposit will be paid out on the order of the depositor or returned to him upon demand. Sayre vs. Weil, 94 Ala. 466, 10 So. 546, 15 L. R. A. 544; 7 C. J. 641; 3 R. C. L. 516.

Deposits are divided into two classes, general and special. A general deposit is a deposit generally to the credit of the depositor to be drawn upon by him in the usual course of the banking business; a special deposit is a deposit for safe keeping to be returned intact on demand, or for some specific purpose not contemplating a credit on general account. A deposit in a bank is presumed to be general in the absence of a special agreement importing a different character into the transaction. City of Miami vs. Shutts, 59 Fla. 462, 51 So. 929; Collins vs. State, 33 Fla. 429, 15 So. 214; Johnson v. Barton, 79 Fla. 46, 83 So. 722; Camp vs. First Nat. Bank of Ocala, 44 Fla. 497, 33 So. 241, 103 A. S. R. 173; 3 R. C. L. 516; 7 C. J. 628.

On the insolvency of the banker all of his general depositors have an equal lien on his general assets, and can have a return of no more than their proportionate share, while the special depositor may reclaim his entire deposit, if it is found intact, or under the modern

modification of the rule, may reclaim it from the general mass with which it has been commingled, if it appears that the banker has not, subsequent to the time of the intermingling, reduced the mass to an amount less than the amount of the special deposit." Northwestern Lbr. Co. vs. Scandanavian American Bk., 130 Wash. 33, 225 Pac. 825, 39 A. L. R. 922.

There is nothing before us to show that the moneys that were placed in the "special account" were put there by reason of an agreement with appellant and, as a mater of course, the bank could not contract with itself. It is our conclusion that appellant has no preferred claim on the theory that the sum shown in the "special account" was a special deposit. It does not follow, however, that because said sum was not on deposit in said bank in the sense that the term is used in banking transactions that the money was not being held by the bank as a trustee, or that the funds were not trust funds in which appellant had a beneficial interest.

No particular form of words is required to create a trust. Walker vs. Close, 98 Fla. 1103, 125 So. 521; 26 R. C. L. 1180. The language must be explicit to that effect or circumstances must show with reasonable certainty that a trust was intended to be created. Bay Biscayne Company vs. Baile, 73 Fla. 1120, 75 So. 860, 868-9, 26 R. C. L. 1180.

If a trust was not in contemplation, a court of equity will not impute an intention to create it. 28 Enc. Law, 2nd Ed. 892.

"The owner and donor of personal property may create a perfect or complete trust by his unequivocal declaration in writing or by parol, that he himself holds such property in trust for the purposes named. The crucial question where a voluntary trust in the settler is sought to be established is whether the declaration on which such a trust is sought to be predicated is suffi-

cient." 26 R. C. L. 1182, Note 12 L. R. A. (N. S.) 549.

In Perry on Trusts & Trustees, 7th Ed., Sec. 97, it is said:

"If the donor or settlor does not propose to make himself a trustee, the trust is not *perfectly* created. As where there is a mere *intention* of creating a trust, or a mere voluntary agreement to do so, and the donor or settlor contemplates some further act to be done by him to give it effect, the trust is not completely instituted, and if it is voluntary, the settlor cannot be compelled to complete it."

This author also says in Section 99:

"Whether the trust is perfectly created or not is a question of fact in each case; and the Court in determining the fact will.give effect to the situation and relation of the parties, the nature and situation of the property, and the purposes or objects which the settlor had in view in making the disposition."

To support its contention that the alleged special account is a trust fund created for its benefit, appellant cites a number of cases to support the rule set out on Page 951 of the annotation in 32 A. L. R. which reads as follows:

"Where a fund has been set apart for the payment of an obligation or class of obligations, or a fund in the hands of a third person has been so designated as to require the latter to make payment out of it to a creditor, the general rule seems to be that the person for whose benefit the fund was so set apart or designated acquires a right to have it applied as directed, which right will be given a preference over the rights of other creditors in case of the debtor's insolvency; provided, of course, that no element of fraud or other superior equity enters into the transaction."

As' an abstract proposition of law this statement will probably not be questioned. The difficulty arises in applying it to the facts of a particular case. If the said sum was *set apart* by the said bank, it was set apart for the purpose of keeping a tender (of rent) good and for

no other purpose, and we have nothing before us to show that there was an obligation on the part of the bank after the termination of the lease to pay rent to the appellant. It is true the bank offered to pay the sum of $241.43 as rent for the month of April, 1927, and advised appellant that it had exercised its option to renew the lease for the period of twenty years, but the check was returned and the bank was advised that the right of renewal was not recognized, and the position of appellant, so far as we are advised, has been adhered to in this litigation. If we assume that the said aggregate sum was set aside to pay rent to be accepted at the option of appellant, in view of the fact that the appellant refused and still refuses to accept it as rent and resists the claim of the said bank, and later of the liquidator, to a renewal of the lease, we are unable to say that there was an obligation on the part of the bank to pay rent to appellant, whatever may have been the purpose of the bank in setting said sum aside, or whatever may have been its liability for the use and occupation of the premises. If there was no obligation to appellant to pay *rent,* and the appellant had not agreed to accept the said sum as rent, equity will not subject such fund to use of appellant upon the theory that a trust was created therein for its benefit.

This case does not come within the rule governing the payment of a dividend by a corporation where it has been declared, and a *fund for its payment has been set apart,* because in such cases there is an obligation of the corporation to pay the dividends to the stockholders. Here there has been no ''meeting of minds'' for the payment of rent.

As we see it, this ''special account'' was not opened for the purpose of securing the payment to the appellant of the amount placed to the credit of such account,

but merely as an additional voluntary undertaking to evidence the good faith of the bank in insisting upon rights contended for by it under the option for a renewal of the lease. The appellant having returned the check and declared that it did not recognize the right of the bank to a renewal of the lease, it was not necessary for the bank to place the money in a special account to keep the tender good. After such refusal, the bank had a right to use the money as its own without destroying the effect of the tender, if it was ready at all times to comply with the terms of the option on its part to be performed, upon demand. 28 Enc. Law, 2nd Ed. 40.

In arriving at a proper conclusion, we cannot disregard the situation of the bank and its relation to the appellant, the purpose or object which the bank had in view in tendering the check for the said sum of $241.43, as rent, and the opening of the said special account upon its books.

The letter to appellant relative to this account signified a disposition on the part of the bank to put itself in the attitude of making a continuing offer of performance (tender), the said sum to be paid to appellant upon request and a concurrent compliance with the terms of the option by appellant. See Taylor vs. Mathews, 53 Fla. 776, 44 So. 146.

We cannot say that it appears with reasonable certainty that the bank intended to make itself a trustee, or that a trust was intended to be created.

Appellant also questions the propriety of the order striking that part of the answer relating to the alleged counterclaim of appellant for double the amount of the rent because of the refusal of the said bank to vacate the premises upon the termination of the lease. We have already held that no trust was created in favor of appellant as beneficiary of the moneys placed in the said

special account. Section 3554 Rev. Gen. Stats. of Florida (1920) reads as follows:

> "When any tenant shall refuse to give up possession of the premises at the end of his lease, the landlord, his agent, attorney or legal representative, may demand of such tenant double the monthly rent, and may recover the same at the expiration of every month, or in the same proportion for a longer or shorter time by distress, in the manner pointed out hereinafter.
>
> All contracts for rent, verbal or in writing, shall bear interest from the time the rent shall become due, any law, usage or custom to the contrary notwithstanding."

If this section does not prescribe an exclusive remedy for the enforcement of the penalty therein provided for (a question we do not decide), appellant would have a remedy at law in the action of debt (21 R. C. L. 221). The alleged counterclaim could not be made the subject of independent bill in equity. The Court, therefore, committed no error in striking that part of the answer relating to alleged counterclaim. See Norris vs. Eikenberry, 103 Fla. 104, 137 So. 128.

The order appealed from is affirmed and the cause is remanded with directions to proceed in accordance with law.

Per Curiam.—The record in this cause having been considered by the Court and the foregoing opinion prepared under Chapter 14553, Acts of 1929, Ex. Sess., adopted by the Court as its opinion, it is considered, ordered, adjudged, and decreed by the Court that the order of the Court below should be, and the same is hereby affirmed, and the cause is remanded for further proceedings in accordance with law.

BUFORD, C.J., AND WHITFIELD, ELLIS, TERRELL, BROWN AND DAVIS, J.J., concur.