J. H. BARGE, as Liquidator of the Bank of Dunnellon, a banking corporation under the laws of the State of Florida, *Appellant,* v. THE TOWN OF DUNNELLON, a municipal corporation under the laws of the State of Florida, *Appellee.*

148 So. 761.

Division B.

Opinion filed May 9, 1933.

Re-hearing denied June 23, 1933.

*Wallace E. Sturgis,* for Appellant;

*W. E. Smith,* for Appellee.

BUFORD, J.—In this case appeal was from a decree in favor of the appellee against the appellant wherein it was held that certain funds in the hands of the appellant as Liquidator constituted a preferred claim in favor of the appellee.

The Town of Dunnellon had certain outstanding bonded indebtedness. It sold its electric light plant to Florida Power Corporation and it was agreed between the Florida Power Corporation and the municipal authorities that $30,000 of the purchase price would be used to retire $30,000 of the bonds of the municipality. An agreement was entered into between Florida Power Corporation and the Municipality that the sum of $30,000 should be deposited as a special trust fund in escrow to be paid out in liquida-

tion of the bonds with other conditions appearing in the contract. The fund was transmitted to the Bank of Dunnellon with a letter signed by Florida Power Corporation and the Town of Dunnellon by its proper officers nominating and appointing Bank of Dunnellon as the escrow agent of Florida Power Corporation and of the Town of Dunnellon for the purpose of holding the fund and the distributing the same in accordance with the contract between the parties. At the bottom of that letter the record shows that the Bank of Dunnellon entered and subscribed to the following:

"November 7th, 1929.

"The undersigned, the Bank of Dunnellon, hereby accepts the appointment as escrow agent in accordance with the foregoing terms and conditions embodied in the foregoing and in the agreement made and entered into on November 7th, 1929, between Florida Power Corporation and the Town of Dunnellon.

Bank of Dunnellon (Seal)

By G. W. Neville, Cashier

J. B. Baskin, President."

It is alleged that the funds so deposited were wrongfully commingled by the Bank with its funds. Under the terms of this deposit and the acceptance, the title to the fund was never vested in the Bank of Dunnellon. It never became the creditor of either the Town of Dunnellon or of the Florida Power Corporation, by reason of such deposit.

It is contended that the Bank of Dunnellon could not accept the fund under the terms and conditions under which it was deposited because it was not authorized under the law to do a trust business. We think this contention is untenable because it is immaterial whether the Bank of Dunnellon was authorized to do a trust business or not. If the Bank assumed to act as Escrow Agent (and we do not

think the law prohibited its acting as such agent), and received a fund to be held in escrow, as it did in this case, it acquired no title to that fund and, even if its action in this regard had been unlawful because of its lack of authority to do a trust business, it could not be maintained that it acquired title to property which none of the parties ever intended should be passed to it simply because it was without lawful authority to act in the capacity in which it assumed to act.

The decree of the chancellor should be affirmed upon authority of the opinion and judgment in the case of Newsome, Liquidator, v. Accacia Mutual Life Association, *et al.,* 102 Fla. 567, 136 Sou. 389, and cases there cited. It is so ordered.

Affirmed.

WHITFIELD, P. J., and BROWN, J., concur.

TERRELL, J., concurs in the opinion and judgment.

DAVIS, C. J., and ELLIS, J., dissent.

DAVIS, C. J. (Dissenting).—I regret that I find myself in such total disagreement with my brethren concerning this and kindred cases of the same character. In my opinion to allow this claim as a preferred claim is to practically nullify the last vestige of protection left to the ordinary common every-day depositor in a State bank, by recognizing that through various contractual devices and manipulations deposits of money can be so arranged for that the depositor, although general in every sense of the word so far as benefit to himself is concerned and in so far as his outward appearance to the public is concerned, immediately becomes a specially favored and preferred creditor in the event of insolvency.

There is, no doubt, a species of cases in which a bank undertakes a relation as trustee or agent to perform a par-

122

ticular act or apply a particular fund delivered to it in the execution of a trust. Thus where a bank accepts money from A under an agreement to temporarily retain it until it can be paid out to B who is the true owner of it, the contract by which the money is delivered over is for the benefit of B the real owner of the fund, and consequently since B, the owner of the money, is not a party to any agreement for general deposit of the fund, he can reclaim that which is his own *if he finds it still in the assets of the bank, or can trace it into such assets.* See cases decided on this subject as listed in 2 ENCYCLOPEDIA DIGEST OF FLORIDA REPORTS, page 222, et seq.

In this case, however, the pleadings admit and the facts show that there was a general "deposit" of the money in the bank by the then owner of that money,—an owner which then had full power to do anything with the money that it pleased. I am wholly unable to see how under the circumstances, the fact that the general deposit was coupled with an agreement or understanding that it was to be disbursed on order, for a particular purpose for the depositor's benefit, can operate to the prejudice of all the other depositors of the bank by allowing the general depositor to reclaim this money out of the bank's assets, and thereby take it away from the common, every-day, ordinary depositors, who are the "forgotten men" and "forgotten women" in these bank liquidations, on the theory that it can be done so as in pursuance of a "trust" deposit, or special deposit.

The deposit of funds in a bank, intended by the depositor to be used for a specific purpose, but which deposit remains at all times the property of the depositor, and subject to his order, may be a deposit for a specific purpose, and entitle the depositor to some added consideration or equity

in a controversy solely between the depositor and the bank, but when the controversy is between the representative of other depositors in that same bank, namely, the bank liquidator, it cannot be held that such a transaction amounts to a special deposit as that term is used in our law. Fralick v. Coeur D'Alene Bank & Trust Co., 36 Idaho 207, 210 Pac. 586.

There is a clear-cut distinction between a special deposit that can be reclaimed as a preferred claim *when traced into the assets coming into the hands of a liquidator* and a deposit *for a special purpose,* whose identity as a segregated asset is lost at the moment of deposit, because the nature of such a deposit is an authority on the part of the depositor to the bank to commingle the fund and use it and treat it as a general deposit from the instant the bank receives it. See 3 R. C. L. 518-519.

Money delivered to a bank to be paid to another person on the happening of some contingency, or on some condition to which the bank agrees, to the effect that the money is received and *held* as specially deposited, is in a true sense a special deposit and may be preferred when traced. 3 R. C. L. But money left with a bank to be entered and posted on the books of the bank as any other deposit, and mingled with the funds of the bank, though understood to be deposited in a special account as a trust fund, is not a special deposit and cannot be so reclaimed. 3 R. C. L. 518.

It seems to me that the distinction between the two cases last cited is obvious. In the first case, the bank has no authority conferred on it by the special depositor to treat the relationship established as one of debtor and creditor, nor to enter the deposit on its books as such, not to commingle the fund with its general funds. The fact that it may in reality do so is simply a breach of the terms of

the deposit and in no wise destroys its trust character. In such case the money is delivered and received on the express understanding and condition that it will be *held* as a special deposit, which contemplates that the fund will neither be commingled with the general funds nor entered on the books as such.

On the other hand a general deposit, understood to be entered on the books of the bank and the money treated by the bank as any other depositor's money by commingling it with the bank's general funds, cannot be converted into a special deposit having a trust character, merely because the bank is notified that the money is being placed in a separate account to be disbursed for trust purposes, or to be held for trust purposes *by the depositor*. In a case like that just mentioned, the money remains at all times within the depositor's control, it becomes commingled with other moneys in the bank and the bank commits no violation of the terms of the deposit by so commingling it, the amount of that deposit is reflected in reports to the Comptroller showing total deposits on hand, the representation is made to the public with the implied, if not the direct consent of the depositor, that his deposit is a general deposit because it is figured into the bank's statement of deposits. To permit such a deposit to have preference would be to work a fraud on every other depositor by giving effect as against the public, to the secret understanding with which the deposit was made and carried on the bank's books to all intents and outward appearances as a general deposit, to be dealt with as such.

In the case at bar, while the Court may well feel disposed to give the city every advantage that can be justly given to enable it to reduce its loss, yet the fact should not be overlooked that cities and towns are expressly authorized

by statute to take securities to protect their deposits against losses like this. See First Am. Bank & Trust Co. v. Palm Beach, 96 Fla. 247, 117 Sou. Rep. 900, 65 A. L. R. 1398.

I think this case is controlled by McCrogy Stores Corp. v. Tunnicliffe (Fla.) 140 Sou. Rep. 806, and not by Newsome v. Acacia Mutual Life Assoc. (Fla.) 136 So. 389. The latter case involved a bank having a special legislative charter giving it trust powers. In this case the bank had no trust fund so far as the record shows.

ELLIS, J. (Dissenting).—I am unable to agree with the conclusion of the majority, or the reasoning of Mr. Chief Justice DAVIS although I agree to the conclusion reached by him that the decree should be reversed.

In the first place, there should be eliminated from the reasoning all considerations of the court's disposition to favor the city by giving to it every advantage that can be justly given it to reduce its loss, as well as all thought of the "common, every-day, ordinary depositors" who, as the Chief Justice says, are the " 'forgotten men' and 'forgotten women' in these bank liquidations."

It may be entirely true that the bank's depositors, whether men or women, are forgotten, but it seems to me that whether they are forgotten by the bank when it is a going concern, or by the State when the liquidator gets control, is a matter which cannot be corrected in litigation like that of the instant case. It may be the degree of forgetfulness is more pronounced and customary when the bank is a going concern than when its affairs pass into the hands of the State for liquidation. In view of the abundant failures of such institutions recently the affirmative side of the proposition may be strongly maintained, which would be an argument in support of the theory that in this case the

special deposit was regarded as an "escrow," or special trust, by the bank officers.

It is perfectly obvious, however, that the transaction must contain within itself the elements of a deposit in the ordinary course of business, or the elements of a special deposit constituting it a specific trust of certain funds. In view of the nature and character of the bank's general and ordinary business, its powers and limitations fixed by its charter, and the law applicable to such claims as made by the appellee in this case, the burden rests upon the town to show clearly that the transaction constituted a trust agreement under which the funds were to be kept separately and apart from the general deposits so that its identity might have been at any time established not as an asset of the Bank but as a fund the title to which never passed to the Bank, but was intended to remain segregated from its assets as the definite property of the person or corporation depositing it, or of the City for whose benefit it was placed there.

If it was afterwards, in violation of the terms of the trust, placed by the Bank officials, or its employees, amongst the general assets of the bank and commingled with its other deposits, that circumstance of wrongful conduct on the Bank's part would not destroy the trust or take from the owner of the property deposited the right to follow the fund into the Bank's assets. It is therefore necessary to look only to the transaction itself for the elements which place the deposit of $30,000.00 in the one category or the other.

The allegations of the bill show that the money was to have been deposited by the Town of Dunnellon in the Bank of Dunnellon "in a special trustee account" to be used for the sole purpose of retiring and redeeming the remainder of certain outstanding bonds. Such were the terms of the ordinance which provided for the sale of the electric plant

to the Florida Power Corporation and disclosed the town's purpose in making the deposit, and is an aid in the interpretation of the so-called escrow agreement.

The agreement entered into with the Power Company contains the same provision. The agreement also further provides that the Town of Dunnellon shall use all "diligence to retire and recall such bonds" and the "deposit shall remain as security for the redemption thereof, and to be used for no other purpose whatsoever." In a later clause, however, there was a modification of that provision under which the Power Company should be reimbursed from that "fund so deposited" for additional monies advanced by it for "recalling and redemption of the said bonds," or if it should become necessary for the Power Company to "retire the said bonds for its own protection." In which case upon the delivery of the bonds so retired to the Bank, the sum deposited shall be refunded to the Power Company for reimbursement.

So the sum was deposited in a "Trustee account" to be used by the Town not at any specified time but at different times suitable to its convenience for three purposes. First, to pay bonds as they were called and redeemed; second, to reimburse the Power Company for money which it might advance to the Town for recalling and redeeming the said bonds; third, to reimburse the Power Company for all bonds which it might retire by its own funds for its protection. In any event the Town by its check on the "Trustee account" was empowered to disburse the fund in whole or in part.

The Bank was appointed jointly by the Town and the Power Company as "escrow agent" of the agreement entered into between them on November 7, 1929, which was the agreement under which the sale of the electric plant was made. In the instrument nominating the bank as "escrow agent" was contained a notification that with the instrument

there was also deposited with the Bank by the Town the sum of $30,000.00 concerning which the Bank was instructed to "deposit and place this $30,000.00 in a special Trustee's account." The Bank was notified that the deposit was to be used for the purpose of retiring the bonds and should remain as security for the redemption of the bonds and security to the Power Company in the event it should find it expedient to advance further monies to the Town to redeem the bonds. The Bank accepted the appointment as "escrow agent."

I can perceive in this transaction none of the elements of a trust with the Bank as Trustee of certain property to be held by it to be set apart from the other assets of the Bank, and from which separate and segregated amount money was to be taken by it from time to time or all at one time for a definite purpose. The Bank was not the Trustee. It merely received the money on deposit agreeing to carry the deposit in a "special Trustee account." The money was deposited by the town, which agreed that it should be deposited in a "special Trustee account" as a sinking fund to be used for a certain purpose. When the Bank accepted the appointment as "escrow agent" the deposit had been made.

When one deposits money in a Bank to a "special Trustee account" it does not constitute the Bank a trustee of the money for a specific purpose, merely because it accepts the deposit so made. No liability attaches to it as Trustee for the purpose to which the money is deposited. That is a matter between the person to whose credit the money is deposited as "special Trustee" and the persons for whose interest or security it is so deposited. The Bank was not required under the "escrow agreement" to decline the payment of any check drawn by the "Special Trustee" which he might draw in payment for a cancelled bond, nor was it

required to examine the transaction and hold or inspect the bond so redeemed. The title to the money passed to the Bank for which, in the usual course of banking, credit was given on its books to the account of the "Special Trustee."

There was nothing in the agreement to prevent the Town or the "Special Trustee" from augmenting the account from time to time by other deposits, indeed the agreement between the Town and Power Company seemed to contemplate such an emergency for the agreement provided that it may become necessary for the Power Company "to advance" "further monies for the recalling and redemption of said bonds." To whom did the Power Company contemplate advancing further monies for that purpose if not to the Town which was to recall and redeem the bonds?

I am therefore of the opinion that the transaction did not constitute the Bank a Trustee, nor did it make of the money deposited a separate and segregated property to be held by the Bank as trustee to which it held no title.

I think the decree should be reversed.