**LUTHER IRA WEBSTER, et al., v. ST. PETERSBURG FEDERAL SAVINGS AND LOAN ASSOCIATION, a corporation.**

**LUTHER IRA WEBSTER, et al., v. FIRST FEDERAL SAVINGS AND LOAN ASSOCIATION, a corporation.**

20 So. (2nd) 400                  January Term, 1945
January 12, 1945                      Division B
Rehearing denied February 1, 1945

*Austin L. Richardson,* for appellants.

*Miller & Peterson* and *B. M. Skelton,* for appellees.

SEBRING, J.:

This suit is brought to determine the title to the proceeds of certain savings bank accounts created by Frank B. Webster, deceased, during his lifetime. The real controversy is between the personal representatives of Webster's estate and certain parties to this suit who claim the deposits as surviving joint depositors.

Three of the savings accounts in question were with First Federal Savings and Loan Association of St. Petersburg. On January 3, 1938, Webster created the first of these accounts by depositing with the savings and loan association the sum of $1000.00 and requesting that an account be opened in the name "Frank B. Webster or in case of death Winniefred Manley." Apparently no signature card or written deposit agreement in the form customarily required was ever executed with the savings bank either by Frank B. Webster or Winniefred Manley in connection with this account—at least no such card or agreement is before us on the record. The manner in which the other two accounts with First Federal Savings and Loan Association of St. Petersburg were created needs a word. In September 1938 Webster, by letter, made known to the bank his desire to open additional accounts. In response to the letter the bank mailed Webster several membership application cards of two different types; one type for the creation of individual accounts, the other for the creation of joint accounts. Printed on the cards is the explanation that if the creation of a "joint-holder with right of survivorship" account is contemplated both "joint depositors" should sign a joint account card, while if an individual account is desired the individual account card should be signed by the owner of the deposit. In due course Webster mailed to the bank two individual-account cards signed by him alone, one joint-account card bearing only the name "Lena Blanch Post" and one joint-account card bearing only the name "Fred Defendorf." Enclosed with the cards was a check from Webster for $2000.00 with the request that two accounts of $1000.00 each be opened in the designation "Frank B. Webster or Lena Blanch Post" and "Frank B. Webster or Fred Defendorf." The bank accepted the signature cards as the bases for the establishment of two separate joint-accounts and issued its investment share certificates to Webster in the names "Frank B. Webster or Lena Blanch Post" and "Frank B. Webster or Fred Defendorf."

The remaining three savings accounts involved in this suit were with St. Petersburg Federal Savings and Loan Association. On February 16, 1939, Webster created in this savings

bank an investment share account in the sum of $500.00. At his direction the bank issued the investment share certificate in the name of "Frank B. Webster or Webster Defendorf." On April 6, 1939, Webster purchased a second $1000.00 investment share certificate from the savings bank, and at his request the certificate was issued with the ownership designation "Frank B. Webster, in case of death Alice A. King." No signature card or depository agreement was ever signed by any of the parties in connection with either of these transactions. On February 26, 1940, Webster purchased a $500.00 investment share certificate from the bank directing that it be made payable "Frank B. Webster in case of death pay to Gladys Thompson." Webster signed a signature card in connection with this transaction in the same language as was used in the certificate to designate ownership. All investment share certificates issued by the savings banks to Webster are similar in language. For example, on the face of the certificate issued in the name of Webster and Post appears the name of the issuing bank, the certificate number, the amount of the account, and the words "This certifies that Frank B. Webster or Lena Blanch Post is a member of the undersigned and holds a One Thousand Dollars investment share account of the undersigned. . . . " None of the certificates involved contains wording indicating that the persons named therein are to hold "as joint tenants with right of survivorship and not as tenants in common," or language of similar import frequently used by banks in the attempted creation of a "joint-ownership with right of survivorship" account.

At Webster's death the personal representatives of his estate tendered the certificates to the banks involved and made demand for payment of the funds. The persons named in the various certificates likewise laid claim to the funds. The banks, being in doubt as to whom payment should be made, filed bills of interpleader and were allowed to bring the funds into court to await judicial determination of ownership. By order of court the interpleader suits were consolidated and heard together. Testimony was taken on the issue of ownership of the funds. At the conclusion of the trial the

chancellor entered a final decree in favor of each of the individual claimants, finding them entitled to the fund. In the final decree the chancellor found that "each certificate, not standing alone but coupled with the evidence of intent and its disclosure of the attending circumstances, establishes an enforceable contract or a valid trust." The chancellor also found that "regardless of whether these transactions can be termed gifts inter vivos, the least that can be said, in light of the evidence and the definite, clean-cut intention which the Court gleans from it and from all the surrounding circumstances, is that these transactions should be upheld in this Court of Conscience whether upon the theory of a trust in each instance or of a contract or simply upon general equitable principles. It is therefore concluded that the several parties named in the certificates should prevail."

The personal representatives of the Estate of Webster have appealed from the final decree.

In order for any of the surviving claimants to be entitled to the bank deposits as against the personal representatives of Webster's estate the evidence must show either (a) that a joint tenancy with right of survivorship was created in the deposit between Webster and such claimant; (b) that Webster made a gift of the deposit to the claimant; (c) that Webster created a trust in the deposit for the use and benefit of the claimant; or (d) that Webster's transaction with the bank in regard to the particular deposit involved created a contract between Webster and the bank for the benefit of the claimant.

From our review of the evidence we think it clear that all accounts involved in this case were opened with funds furnished entirely by Webster. The "joint depositors" of the funds had no knowledge of the transaction until after the accounts were created. When the accounts were opened, the investment share certificates evidencing the deposits were delivered by the banks to Webster. The certificates remained in Webster's exclusive possession up until the time of his death. Upon his death the certificates came into the hands of his personal representatives. Throughout his lifetime Webster collected all interest on the deposits. From none of

the savings certificates, signature cards, or letters in evidence can it be determined what Webster was trying to accomplish by setting up the accounts in the manner that he did. But we think that the overwhelming weight of the testimony given by witnesses produced at the trial is to the effect that Webster intended to retain possession of the certificates evidencing the deposits during his lifetime so that he could collect the interest and control the accounts at his pleasure, and that upon his death such balances as remained, if any, should be paid over to the individuals named in the certificates without the necessity for administration of the funds as assets of the estate of a decedent.

Upon these facts we find no evidence of the creation of a joint tenancy in the funds with rights of survivorship in either of the claimants. The facts of the case are not as strong in favor of the claimants as the facts involved in Cerny v. Cerny, 152 Fla. 333, 11 So. (2nd) 777, and there it was held that the claimant was not entitled to the fund by right of survivorship.

The facts of this case fail to establish a gift of the funds to the claimants. There could not have been a gift causa mortis for the accounts were not established by Webster in contemplation of death from a then present illness or impending danger. Leonard v. Campbell, 138 Fla. 405, 89 So. 839. Neither were the essential elements present in the transactions to effect a gift inter vivos as to each of the deposits. It is an elementary rule of law that to effect a gift inter vivos the legal title to the thing given must pass from the donor to the donee. In order for a surviving party to be entitled to such fund as a gift there must have been the intention of the depositor to relinquish dominion of the subject matter to the person named in the joint account absolutely, and there must have been a present delivery and surrender of control over the funds to the donee. Jones v. Ferguson, 150 Fla. 313, 7 So. 2nd 464. The intention to make a gift of the balance of a bank account at the death of the donor to the survivor, where the donor retains the control and beneficial interest in the fund during his lifetime and does not intend for it to become effective until death does not effect a gift, as there

is no final irrevocable act carrying into completion the intention of the donor.

The claims of the survivors cannot be sustained upon any principles of trust. In order to create a valid voluntary trust the equitable title must pass to the cestui que trust, while the legal title is transferred to a third person or is retained by the settlor to be held for the purposes of the trust. Axtell v. Coons, 82 Fla. 158, 89 So. 419; Reid v. Barry, 93 Fla. 849, 112 So. 846. For the purpose of proving the trust relationship the evidence must be clear and unmistakable both as to the intent to create the trust and as to the execution of that intent. McCrory Stores Corp. v. Tunnicliffe, et al., 104 Fla. 683, 140 So. 806. The acts or words relied on must be unequivocal, implying that the person holds the property as trustee for another. There must be a present executed gift of the equitable title without reference to its taking effect at some future time. The evidence in this case fails to show a declaration of trust, either in writing or by parol. There is nothing in the record to justify even an inference that the deceased in his lifetime held the legal title to the deposits for the purposes of a trust, or that he intended that the actual beneficial equitable title to the funds should pass to the "joint deposits" at the time the accounts were created. Indeed, all evidence is to the contrary.

In recent years some few courts have upheld the right of a "co-depositor" to funds deposited by the owner in an account opened in the name of himself and such "codepositor," on the theory that the deposit agreement between the depositor and the bank created a contract between the owner of the fund and the bank for the benefit of such "codepositor," which could be enforced by the latter as against the estate of the decedent owner. We have examined the cases on the proposition with care; and although some of the courts have sustained the right of the survivor to the fund without any clear or satisfactory reason given, we think that it can be safely said that in the great majority of the cases where the funds were furnished entirely by one party there appeared in the transaction involved some element of present gift, trust, or joint ownership which might well have upheld the

claim of a survivor upon the gift, trust, or joint-ownership theory, without regard to the contract theory. See 103 A.L.R. 1140; 135 A.L.R. 1021; 149 A.L.R. 897; Matthew v. Moncrief, 135 Fed. (2) 645, 149 A.L.R. 856.

But whatever the underlying considerations upon which the courts have allowed recovery upon the contract theory, we fail to find in the case at bar clear and unequivocal evidence of an enforceable contract for benefit of third parties. The signature cards signed by Webster at the time of the establishment of the accounts did not create a third party contract. There is nothing in the correspondence that passed between Webster and the banks, or in the savings share certificates issued by the banks, from which the creation of such contracts may be reasonably inferred. The testimony of the witnesses is not sufficient to show that such contracts were intended, for it points more clearly to the attempted establishment of testamentary gifts to designated survivors than it does to executed contracts between Webster and the banks for the benefit of donee beneficiaries.

The chancellor has found in his final decree that the deposits in the various savings accounts "should be upheld in . . . [a] Court of Conscience whether upon the theory of a trust in each instance or of a contract or *simply upon general equitable principles*." While we have no doubt that Webster intended that the individuals named in the certificates of deposit should eventually become the owners of the principal amounts left in the bank accounts at his death, we think that it is clear and undisputed that he intended such ownership to be postponed until his death. The evidence shows the supposed gifts to be incomplete and imperfect for want of delivery; there is no evidence of a trust or of a joint tenancy estate; there is insufficient evidence to establish a contract for the benefit of the survivors. The transactions were nothing more in legal effect than ineffectual attempts to do that in the future which could only be accomplished by last will and testament. Under these circumstances no power exists in the courts—even in courts of chancery—to decree the deposits to be the property of the survivors "simply upon general equitable principles," for with the facts as they are equity has no course open other than to follow the law.

420

The decree appealed from must be reversed with directions to the court below to enter a final decree in favor of the personal representatives of the estate of Webster.

It is so ordered.

CHAPMAN, C. J., BROWN, BUFORD and THOMAS, JJ., concur.