52 So.2d 670 (1951)
COLUMBIA BANK FOR COOPERATIVES
v.
OKEELANTA SUGAR COOPERATIVE et al.
Supreme Court of Florida, en Banc.
April 10, 1951.
Rehearing Denied June 11, 1951.
*671 Arthur W. Holler, Jr., of Columbia, S.C., for appellant.
Winters, Foskett, Cook & Tylander, West Palm Beach, for appellees.
HOBSON, Justice.
Okeelanta Sugar Cooperative (hereinafter called Okeelanta), a cooperative association organized under the laws of the State of Florida, owned and operated a sugar mill and refinery. Okeelanta at one time owned the land adjacent to its mill, on which lands sugar cane was raised as a raw product for the mill and refinery.
By contract between Okeelanta and the British West Indies Central Labor Organization (hereinafter called the Organization) foreign labor was imported to assist in the growing of sugar cane. The contract between Okeelanta and the Organization provided that the laborers would be fed by Okeelanta and that the cost of such feeding might be deducted from the daily wages of the laborers, before payment to them, at the rate of $1.20 per laborer per day. Thereafter, according to the stipulation of facts upon which this case was tried, "An oral agreement was made between Okeelanta and G.L. Royal for feeding such Jamaican labor at $1.20 per day." (Italics supplied)
The agreement between Royal and Okeelanta (as it was established by the proof) was entirely separate from and unrelated to the contract between Okeelanta and the Organization.
Okeelanta encountered certain financial difficulties which culminated in a proceeding brought by its mortgagee, appellant here, for the foreclosure of a mortgage covering certain real and personal property and for the enforcement of a pledge of funds and other personal property. A receiver was appointed to take charge of, protect and operate the mortgaged property and, at the same time, to take possession of and administer, in accordance with the orders of the court, the funds and other property pledged to the appellant as security for the mortgage indebtedness.
*672 The appellee was permitted to intervene and file an answer and counterclaim in the proceeding alleging the existence of a trust upon $2,745.64 of the funds held by the Receiver, which was the amount of the value of meals furnished by Royal to the laborers for a two-week period for which compensation had not been received. G.L. Royal had accepted a promissory note from Okeelanta in the same amount and had later indorsed it to Royal's Inc., a Florida corporation, (appellee here) in payment of his indebtedness to said corporation.
Apparently the learned Chancellor entered his order denying appellant's motion to dismiss the counterclaim of the Intervenor, Royal's Inc., and ordered the Receiver to pay $2,745.64 to Royal's Inc., upon some theory of a trust with reference to the money originally owed to Royal (now claimed by Royal's Inc. to be due to it as holder and indorsee of the promissory note) by Okeelanta for services rendered in feeding the Jamaican laborers. The Chancellor did not set forth the reasons for his ruling but contented himself with finding the equities to be with the Intervenor, Royal's Inc., and that the material allegations of the counterclaim were established by the proof.
We have sought in vain to unearth some theory of the law of trusts which might be said to have been brought into play by virtue of the pleadings in, and the facts of, this particular case. We do not find that a trust existed with reference to funds due Royal or Royal's Inc. by Okeelanta but, on the contrary, the obligation was simply an ordinary debt evidenced by the note. Certain it is that no express trust was created and Royal's Inc. in its pleading laid no predicate for a claim and made no averment that any other type of trust existed. An express trust cannot exist unless there is an execution of an intention to create such a trust by the one having legal and equitable dominion over the property made subject to it. 54 Am.Jur. 22. The proof in this case does not show the execution of such an intention by contract or agreement. Moreover, it cannot be said that an express trust should be held to exist by inference because the evidence does not show clearly, or at all, that the laborers turned their money over to, or permitted it to be deducted from their wages by, Okeelanta for the benefit of Royal. Indeed, the evidence fails to show that the laborers knew anything about the agreement between Royal and Okeelanta or that Royal was even informed of the existence of the contract between Okeelanta and the Organization. Assumptions to the contrary cannot be indulged in a case wherein it is sought to establish an express trust founded upon a parol agreement. The counterclaim of the Intervenor contains no basis upon which we can predicate, and it is doubtful that the stipulated facts justify, the conclusion that a resulting trust arose by virtue of the transaction between Okeelanta and G.L. Royal and we do do not find allegations or evidence of a confidential relation or of any elements of fraud or inequities which would warrant a determination that a constructive trust should be declared.
In its answer and counterclaim Royal's Inc. alleged: "2. That pursuant to arrangements made by and between said Okeelanta Sugar Cooperative, the said G.L. Royal and said employees, meals were served to said employees without payment directly by the employees, and the said Okeelanta Sugar Cooperative was to deduct from the wages and salaries of said employees for the said G.L. Royal the amounts of money necessary to defray the costs of the said meals served and after so deducting such amounts, Okeelanta Sugar Cooperative was to forthwith pay over to the said G.L. Royal the amounts of money so deducted."
The stipulation of facts contains the the following recitations: "3. An oral agreement was made between Okeelanta and G.L. Royal for feeding such Jamaican labor at $1.20 per day. Under this agreement, Okeelanta furnished a mess hall, stoves, water heating system, and a truck for serving hot meals in the field. Royal furnished everything else, although he used labor furnished by Okeelanta but *673 for which credit was given in the settlement of charges for meals. Such feeding of Jamaican labor was begun in the fall of 1946." (Italics supplied)
It will be noted that the allegata and probata do not meet and correspond. The foregoing allegations might be said to have made a case which would justify a holding that the moneys deducted from the laborers' wages constituted a trust fund for the benefit of G.L. Royal; yet, proof as contained in the stipulation of facts shows only the relationship between Okeelanta and G.L. Royal of debtor and creditor.
It might be suggested that the receiver did not deny the above quoted allegations which were contained in the answer and counterclaim of Royal's Inc. and, therefore, the allegations should be deemed to have been admitted as true and that proof of them was unnecessary. This position is not tenable. As his pleading shows, the receiver could only frame his response to the intervenor's answer and counterclaim from information secured from the books and records of Okeelanta. These books and records did not contain clear and positive proof; indeed, they did not contain any proof of an agreement between Okeelanta and Royal, or between Okeelanta, Royal and the employees whereby Okeelanta assumed the position of trustee of the employees' money for Royal's benefit. The case was tried upon a stipulation of facts which disclosed only an oral agreement between Okeelanta and G.L. Royal which bound Okeelanta to pay to said Royal $1.20 per laborer per day for feeding the Jamaican laborers. When a case is tried upon stipulated facts the stipulation is conclusive upon both the trial and appellate courts in respect to matters which may validly be made the subject of stipulation. Indeed, on appeal neither party will be heard to suggest that the facts were other than as stipulated or that any material fact was omitted. 60 C.J. Page 69, Sec. 51; 50 Am.Jur. Page 610, Sec. 9.
"In the absence of grounds sufficient to authorize a party to withdraw from, or rescind, the stipulation, or the court to set it aside, an agreed statement of facts on which the parties submit the case for trial is binding and conclusive on them, and they will not be permitted to deny the truth of the facts stated, nor be heard to claim that there are other facts that the court may presume to exist; and the burden is on the party seeking to recover to show his right from such facts. So, also the court is conclusively bound by the facts stated and must render judgment according as the facts agreed upon require." (Italics supplied.) 60 C.J. Page 83, Sec. 78.
Moreover, the receiver's failure to deny expressly the allegations of the intervenor's counterclaim, to the effect that there was an agreement between Okeelanta, Royal and the employees that Okeelanta would deduct from the employees' wages $1.20 per laborer per day for the benefit of G.L. Royal, should not be taken as an admission that there was such an agreement, nor should proof thereof be dispensed with. The receiver is the answering party and the allegation was one which attempted to assert a parol agreement to create an express trust. The receiver is an arm of the Court and the funds in his possession are as though they were in the hands of the Court and are held for the benefit of all lawful claimants. A trust should not be declared upon the funds in custodia legis in favor of one creditor and thus give such creditor a preferential status over others, in the absence of strong proof that a trust relation did in fact exist. In such situation the Court should not be bound by technical niceties arising solely from the state of the pleadings; nor should its alter ego be so circumscribed. The Court must zealously guard the funds in the hands of a receiver in the interest of all claimants thereto. It should not accept and act upon admissions presumed from the pleadings but should require positive proof of the existence of a trust before funds held by a receiver, which are themselves trust funds for all legitimate claimants, are diminished or extinguished by virtue *674 of one creditor's claim of a trust in his favor when such claim is predicated upon an alleged oral agreement.
Under the facts and circumstances of this case the receiver should not be held to have admitted, by his mere silence, allegations of sine qua non facts because proof of such facts is essential to the establishment of the existence of a trust upon funds actually held in trust by the Court. In all cases wherein relief is predicated upon an oral agreement for an express trust in personalty or upon facts which might be contended to establish a constructive or resulting trust, proof of such an agreement or of such facts must be weighed cautiously and should be clear, positive and unequivocal. With reference to an express trust the general rule requires at least a clear preponderance of the proof and many courts have held that the parol evidence must be of a conclusive, or well nigh conclusive, character. Of course, in the case of a resulting trust the rule is even stronger and requires proof sufficient to remove from the mind of the Chancellor every reasonable doubt of the existence of such a trust.
Although Okeelanta deducted $1.20 per day per man from the wages due to the laborers (evidently under its original contract with the Organization) and did not pay Royal as it had orally agreed to do, such action did not make it a trustee, but merely a debtor to Royal or his indorsee, Royal's Inc. Further, as aforestated, there is no proof of a contract between Okeelanta and the laborers wherein and whereby said laborers agreed that Okeelanta should deduct from their wages any sum of money for the benefit of G.L. Royal or Royal's Inc. Nor is there any evidence to establish the purported fact that Okeelanta ever agreed with, or suggested to, Royal or anyone else that it (Okeelanta) would deduct $1.20 per laborer per day for Royal's benefit. It is true, as suggested by counsel for appellees, that the appellant, by adopting the receiver's reply to appellees' counterclaim, admitted that records in the possession of the receiver show that as book transactions deductions were made from labor payrolls at the end of each payroll period and that such deductions were to be remitted to G.L. Royal in payment of meals furnished to the laborers during such labor payroll period. This was not an admission that there was an agreement between G.L. Royal and Okeelanta that such deductions were to be made for the benefit of, or that they were to be remitted to, Royal but was only an admission that the records show that Okeelanta made, and intended to remit, such deductions to G.L. Royal. Although persuasive, this circumstance falls short of satisfying the rule that proof of a parol agreement to establish an express trust must be received with caution and should be clear, positive and almost conclusive. If there had been any competent proof of an agreement to create a trust the disclosure made by the books and records probably would have been sufficient substantiation thereof to have satisfied the rule concerning the degree of proof required to establish a trust founded upon a parol agreement. We repeat that there is no proof in the stipulation of facts of any agreement between Royal and Okeelanta or between Royal, Okeelanta and the employees that the deductions were to be made by Okeelanta for the benefit of Royal and remitted to him. Had any such contract or agreement been proven, a trust might have been decreed to have existed in favor of G.L. Royal with reference to the funds so withheld by Okeelanta from the wages due to the laborers. In the absence of proof of such a contract, however, the Court is not authorized to declare that a trust ever existed with reference to the sums of money due by Okeelanta to G.L. Royal. It cannot be held that a trust existed solely by virtue of the contract between the Organization and Okeelanta, regardless of the fact that the laborers were parties thereto or consented to and acquiesced in such an arrangement.
There is still another reason why Royal's Inc. should not prevail in this controversy. Royal's Inc. is indorsee of a promissory note which evidences the *675 debt originally due Royal by Okeelanta. The indorsement and delivery of the note did not operate as an assignment of Royal's interest in and to the alleged trust fund.
The authorities are divided upon the question of whether an indorsement and delivery of a note clothes the holder thereof with authority not only to sue upon the note but upon the original claim if he should so elect. Those courts which hold that the indorsee may sue either upon the note or bring an action upon the original consideration apparently do so upon the theory that the transfer of a note operates to constitute the indorsee the party really interested in the debt for the payment of which the note was given. The courts which hold that the indorsement of a note does not pass to the holder thereof a right of action on the original claim for which the note was made predicate their holdings upon the hypothesis that the note is merely evidence of the debt and not the debt itself; that the evidence of the debt (the note) is only an incident; the debt is the principal and "it is a maxim of the law that the incident shall pass by the grant of the principal, but not the principal by the grant of the incident." It has also been held that the incident, when the principal and the incident are separable, becomes the principal as between the parties to the transfer, if the incident be transferred, and the principal is thereafter either extinguished or temporarily suspended.
It is our conclusion that regardless of whether the indorsement of the note carried with it the right to sue upon the original claim in an action upon the common counts, the indorsement and transfer of the note did not amount to an assignment of Royal's asseverated interest in and to the alleged trust fund. An assignment of an interest in a trust is a transfer of right, title and estate in and to property; it is customarily considered as more than an assignment of a chose in action. 54 Am.Jur., Sec. 105.
G.L. Royal did not, by his indorsement of the note as a matter of law or independently as a matter of fact, assign his right to any funds which he might have claimed were held in trust for him. The indorsee (Royal's Inc.) is, therefore, limited to an action upon the debt as evidenced by the said promissory note, or possibly upon the original debt, and has no foundation upon which it can predicate a contention that a trust in its favor was created by virtue of the relationship which might have existed previously between G.L. Royal and Okeelanta or that it stepped into Royal's shoes in connection with said alleged trust.
It might be said that there was no evidence which disclosed an intention on the part of Royal (prior to the indorsement and delivery of the note by Royal to Royal's Inc.) that the acceptance of the note by him would constitute a novation, but when Royal negotiated the promissory note by indorsement and transfer to Royal's Inc. without attempting in any manner to assign his averred interest in and to an alleged trust his conduct showed clearly that he treated the promissory note as a new contract which had the effect of extinguishing any right which Royal might once have had to a claim that a trust relation existed. Certainly thereafter Royal's Inc. could not claim an interest in and to the asserted trust.
If there had been no negotiation of the promissory note it might properly have been held that the acceptance of the note did not operate as a novation and therefore a bar to Royal's claim that a trust existed. The negotiation of the note, however, made it crystal clear that the note was considered and treated by Royal as the sole evidence of, and only predicate for, any claim which he might have had against Okeelanta.
We are forced to conclude that the order from which this appeal was prosecuted should be, and it is hereby, reversed.
SEBRING, C.J., and TERRELL, CHAPMAN, THOMAS and ADAMS, JJ., concur.
ROBERTS, J., not participating.