ALLEN, Acting Chief Judge.
The appellant, who was plaintiff below, seeks review of a summary final judgment entered for the defendant-appellee in an action at law to recover damages for monies removed by the defendant-appellee from a joint savings account between her and the deceased, C. Antonio Dattolo, a Catholic priest.
The defendant-appellee and Father Dat-tolo became associated in New York in 1942, and the defendant cared for the deceased until his death in 1960. While in New York, Father Dattolo maintained an account in a New York bank, in respect to which defendant, in her testimony, alleges she was given his power of attorney. The appellee, in her brief, alleges that this account was a joint account and she was confused in stating that she had the power of attorney. Father Dattolo and the defendant moved to St. Petersburg, Florida, in 1951, and each contributed toward the purchase of a house there. The defendant paid the bills and interest on the mortgage *61 against the house out of her personal checking account and subsequently purchased Father Dattolo’s interest in the house with funds from her checking account. Father Dattolo and the defendant apparently bought and sold stock held in their joint names. However, defendant filed no tax return at that time, while Father Dattolo declared the dividends and interest on the St. Petersburg savings account on his individual tax return.
The defendant, in her depositions, testified that Father Dattolo was in poor health, needing constant care and attention, and that she provided this care until his death on January 18, 1960. The savings account in the New York bank in the amount of $10,000.00 was closed out in January, 1951. That same month the $10,000.00 was deposited in a savings account in the First National Bank of St. Petersburg. The account was payable to C. A. Dattolo or Hilarían Shea and both parties signed the signature card, which read: “Joint & Several Account, Payable to Either or Survivor.”
The defendant testified that she never any funds in the account although she claims that dividend checks jointly owned by her and Father Dattolo were deposited in the account. She testified that on various occasions Father Dattolo stated to her that when he died he wanted this money to be hers. He died intestate on January 18, 1960, and on February 16, 1960, the defendant withdrew $16,926.51 from the joint savings account.
Subsequently, plaintiff-appellant filed its complaint for damages against the defendant who answered denying plaintiff’s entitlement to the fund and asserting that the account was joint with survivorship and automatically vested in her upon the death of Father Dattolo.
Both sides moved for summary judgment and upon the pleadings, affidavits and depositions, the lower court entered summary final judgment for the defendant.
The lower court stated in its Decision with Opinion as follows:
“* * * The only issue before this Court is to determine whether or not the creation of this account constituted a gift inter vivos, or was an attempted testamentary bequest.
“The Court has carefully considered CHASE FEDERAL SAVINGS & LOAN ASSOCIATION vs. SULLIVAN, [Fla.] 127 So. (2nd) 112, and from the facts before this Court and the law enunciated within the said decision is of the opinion that the creation of the joint account constituted a gift inter vivos and comes within the ambit of the basic elements of a gift as set forth in this case.”
We must reverse the trial judge and remand the case for a trial upon the issues presented by the pleadings.
A reading of the Decision with Opinion-of the court below compels us to the belief that the trial judge was actually weighing the evidence before him as if the case was. before the court on a trial of issues, whereas the court had before him motions of each of the parties for a summary judgment. For instance, the court in his opinion said:
“The answers of the defendant in response to questions propounded to her on December 12, 1961, upon discovery, indicate that she was confused and laboring under some difficulty. The Court attaches little significance to the last question of counsel for plaintiff as the same appears on page 18 of the deposition. This he designates as ‘the 64-dollar question’. This was a leading question and for the apparent purpose of lending emphasis was repeated. The answer does not militate-against a gift inter vivos, but merely fixes the time when the decedent would no longer have any joint control with the defendant over the balance in the account.”
*62 The defendant, in her deposition, with reference to the New York account, stated:
“Q Did you ever deposit any of your own funds in this account?
“A No, but I did give him some money. I did not. I did give him some money. Whether he put it in here or not I don’t know.
“Q When you say you gave Father Dattolo some money in dollars and cents, what amount are you speaking of?
“A Well, different times I gave him hundreds of dollars I would get from gifts. I was planning- on my son’s education for his future and I could not say whether he deposited it in here or not but I gave it to him.
“Q Did you sign a joint depository slip for this account?
■“A No.
“Q The only one who could withdraw from this account was Father Dattolo ?
-“A No, I had the right to withdraw. He gave me the power of attorney for this bank. In this bank which of course I never used. I was only in the bank once and that was the time it was opened.
“Q Did you ever withdraw funds from this account?
'“A No. I was only in that bank at one time when the bank account was opened. I never entered that bank afterwards although he had me sign these different papers, and this man he was very friendly with and his name is Vallenti and he can testify to me surely not entering that bank ever other than that one time.
* * * * *
‘“Q When was this account closed out, do you recall?
“A In 1950 — that is January 16, 1951.
“Q What was the amount of money withdrawn at that time?
“A $10,000.00.
“Q Do you know where that money was deposited, or placed after it was withdrawn ?
* * * * * *
“A Put in this bank here, the bank here in St. Petersburg.
“Q Do you mean the account at the First National Bank in St. Peters-burg?
“A Yes. Excuse me for not being specific.”
The appellant argues that there was no showing of intent on the part of Father Dattolo to transfer a present interest in his savings account; that the account was opened as a convenience account; that equal control of the funds in the account was not given appellee; and that the establishment of the joint bank account was an ineffectual attempt to do that which could only be accomplished in a Will by Father Dattolo.
The appellee, in her brief, does not attempt to support the trial judge’s decision that the creation of the joint account constituted a gift inter vivos but states:
“It is the appellee’s position that the pleadings, depositions and affidavits in this case conclusively disprove that the issue involved is the validity of an attempted gift inter vivos, but conclusively establishes the creation of a joint account with right of survivor-ship by the joint owners with their joint funds with no similarity of facts in the cases cited by the appellant and the established facts in the case at bar.”
In the case of Spark v. Canny, Fla. 1956, 88 So.2d 307, the Supreme Court of Florida had before it an action which was *63 brought by a daughter as her mother’s executrix, against another daughter and a savings and loan association to determine the parties’ rights to a savings account carried as a joint account in the association in the names of the mother and other daughter. The circuit court entered a decree adverse to the executrix and she appealed. The Supreme Court held that where a mother established an account for the mother’s own convenience and without donative intent, such daughter was not entitled to the balance on deposit in the account at the mother’s death. The Supreme Court, in an opinion written by Mr. Justice Roberts, said:
“This court apparently follows the ‘joint tenancy’ theory, since it was said in Crawford v. McGraw, Fla. 1952, 61 So.2d 484, 487, that ‘The opening, of a joint bank account with the intention of creating a right of survivorship is a means of creating a joint estate in personal property.’ and most of the cases involving a claim by the survivor to a joint bank account heretofore decided by this court were principally concerned with the question of whether the banking memoranda establishing the joint account sufficiently complied with Section 689.15, Fla.Stat.1955, F.S.A., which abolished the right of sur-vivorship in joint tenancies except where ‘the instrument creating the estate shall expressly provide for the right of survivorship * * See Crawford v. McGraw, supra, 61 So.2d 484; Crabtree v. Garcia, Fla.1949, 43 So.2d 466; In re Brandle’s Estate, Fla. 1953, 65 So.2d 27.
“But this court has never held that the lack of donative intent of a deceased joint account holder, with whose funds the joint account was established, could not be shown to defeat a claim by the surviving joint account holder. On the contrary, the court emphasized in Crawford v. McGraw, supra, 61 So.2d 484, 488, that ‘in both the Garcia case [Crabtree v. Garcia, supra, 43 So.2d 466] and this case it was undisputed that the intention of the deceased and the co-depositor was to establish a joint account with the right of survivorship.’ And in Webster v. St. Petersburg Federal Savings & Loan Association, supra, [155 Fla. 412] 20 So.2d 400, 403, this court pointed out that ‘in'the great majority of the cases [from other jurisdictions] where the funds were furnished entirely by one party there appeared in the transaction involved some element of present gift, trust, or joint ownership which might well have upheld the claim of a survivor upon the gift, trust, or joint-ownership theory, without regard to the contract theory.’
* h= * * * *
“We hold, therefore, that where a joint bank account with right of survivorship is established with funds of one person, as here, a gift of the funds remaining in the account at the death of the creator of the joint account is presumed; but such presumption is rebuttable and may be overcome by clear and convincing evidence to the contrary. Cf. Seymour v. Seymour, Fla.1956, 85 So.2d 726. Since the evidence in the instant case showed conclusively that the joint bank account was established by Mrs. Steding solely for her own convenience and without donative intent, it was error to hold that Mrs. Canny was entitled to the balance on deposit in the account at Mrs. Steding’s death.”
In the case of Chase Federal Savings and Loan Ass’n v. Sullivan, Fla.1960, 127 So. 2d 112, the Supreme Court held that it had been established that the joint account was created by the decedent solely with the-intention that the decedent’s friend, as survivor, should have the remaining funds in. the account at the time of decedent’s death. However, the presumption that decedent ever surrendered, or intended to surrender an equal right to withdraw funds on deposit during her lifetime, or that the friend accepted an interest in such funds during- *64 the lifetime of decedent, had been rebutted. The Court further held that the gift of the funds was a testamentary transfer and void for failure to comply with the requirements of the Florida Probate Law and that the administrator was entitled to the remaining funds in the account.
The Supreme Court, in its opinion, again by Mr. Justice Roberts, said:
“The fundamental question here is that of surrender of dominion and control by the donor. It is true that this essential element relating to gifts inter vivos cannot be strictly and literally applied because of the very nature of a joint fund. However, we think there must exist an intention that each party shall have a present, equal right to withdraw the funds. See Hagerty v. Hagerty, Fla.1951, 52 So.2d 432. This court in Spark v. Canny, supra, 88 So.2d 307, at page 311, said in discussing Murray v. Gadsden, supra, 91 U.S.App.D.C. 38, 197 F.2d 194, 33 A.L.R.2d 554, ‘There, the federal court discarded the “contract theory” and held that a joint estate in a bank account “is not established unless it is the result of a gift or a trust as a condition precedent * * *” We think this is the sounder and more logical rule than the “contract theory” and one which is entirely in accord with the previous decisions of this court respecting joint bank accounts with right of survivorship.’ In applying the tests of a gift inter vivos, i. e. clear intention of the donor to transfer a present interest, delivery by surrender of dominion and control to the donee, and acceptance of the gift by the donee, the rules have been modified by the nature of a joint fund but the basic elements are the same: do-native intent, delivery — not the money, in specie, in the joint fund, but a gift of an undivided interest in the funds, the surrender of an equal right to withdraw the funds, and acceptance by the donee. Cf. McKinnon v. First Nat. Bank of Pensacola, 77 Fla. 777, 82 So. 748, 6 A.L.R. 111; King v. King, Fla. 1951, 55 So.2d 181; Webster v. St. Petersburg Federal Savings & Loan Ass’n, 155 Fla. 412, 20 So.2d 400.”
The appellant here contends (a) that the lower court should have granted it a summary judgment or, in the alternative, (b) set the case for a trial on the issues made below.
The appellee argues that the fund was accumulated by monies of both the defendant and Father Dattolo. On the remand of this case, the parties should be permitted to amend the pleadings, if they deem it advisable, to determine whether or not the funds deposited in the joint account were funds of both Father Dattolo and the defendant, Hilarían Shea, and whether the facts adduced at the trial showed a gift inter vivos or an attempted testamentary transfer.
Reversed.
KANNER, J., and McCORD, GUYTE, Jr., Associate Judge, concur.